# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GERALD ELAM, | ) |
| Petitioner, | ) |
| v. | ) No. 4:09-CV-00308-DGK |
| LARRY DENNEY, | ) |
| Respondent. | ) |

## **ORDER**

Pending before the Court is Petitioner Gerald Elam's First Amended Petition for a Writ of Habeas Corpus (Doc. 16) brought pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a sentence of life without parole for first-degree murder, second-degree arson, and armed criminal action for killing his eighty-seven year-old grandfather.

For the following reasons the Petition is DENIED.

## BACKGROUND

**1.  Factual Background**

On a petition for a writ of habeas corpus brought by a person in state custody, a federal court views the facts and evidence in the light most favorable to the state court's verdict. *Hendricks v. Lock*, 238 F.3d 985, 986 (8th Cir. 2001); *see also* 28 U.S.C. § 2254(e)(1) (2009). The evidence in this case can be summarized as follows:[1]

Sometime between late evening June 2, 1997, and the early morning hours of June 3, 1997, Petitioner Gerald Elam stabbed to death his eighty-seven year old grandfather, Minis Elam, in his grandfather's home in Macon County, Missouri. Elam then set a fire and left his

---

[1] This summary draws heavily from the reported decision of the Missouri Court of Appeals in *State v. Elam*, 89 S.W.3d 517, 520-21 (Mo. Ct. App. 2002). More detailed facts are included where appropriate in the Discussion section of this order.

grandfather's body in the burning house. Neighborhood residents, as well as a trucker, saw Elam leaving the area.

Police later questioned Elam about his grandfather's death and the fire. Elam initially offered different theories about the death but eventually confessed to stabbing his grandfather, alleging self-defense. He admitted starting the fire in order to cover up evidence of his grandfather's murder. Elam also told investigators he believed his grandfather was the devil.

The State charged Elam with first-degree murder, armed criminal action, and second-degree arson. Based on his statements made during interrogations, Elam was sent to Fulton State Hospital for a preliminary psychiatric evaluation. On September 25, 1997, the trial court ordered an evaluation of Elam's mental competency to stand trial.

Dr. John Zimmerschied, a psychiatrist and certified forensics examiner, evaluated Elam and diagnosed him with "schizoaffective disorder, bipolar type." Dr. Zimmerschied concluded that as a result of his mental disease, Elam was unable to understand the legal proceedings against him or assist in his own defense. On September 9, 1998, the court found Elam incompetent to stand trial and committed him to the Department of Mental Health (DMH).

On May 5, 1999, the DMH moved to proceed with the criminal case. The motion was prompted by an April 1999 evaluation and report by two DMH psychologists who determined that Elam's mental condition had improved. At the time Elam was taking 20 mg of Zyprexa, an anti-psychotic medication, per day. The psychologists concluded Elam was competent to proceed to trial but should "remain on his current medication regime." The court scheduled a trial beginning on October 2, 2000. He was returned to the Macon County jail to await a new competency hearing and a possible trial.

After a change of venue to Livingston County was granted, Elam was transferred to the Livingston County jail on August 5, 1999. For the next 14 months between his transfer to the

Livingston County jail and his September 2000 competency hearing, Elam did not receive and did not take the recommended dosage of Zyprexa.[2]

On September 13, 2000, Elam filed a motion to stay based on a competency evaluation by Dr. Rosalyn Inniss, a retained psychiatrist. Dr. Inniss concurred with Dr. Zimmerschied's diagnosis of schizoaffective disorder, bipolar type, and further found Elam suffered from paranoid schizophrenia. At a hearing on the motion to stay Dr. Inniss testified that Elam was "limited in his ability to fully understand the proceedings" and "would be most challenged in ... being able to give reasonable assistance to counsel in the process of his own defense." Dr. Inniss based this conclusion on five visits with Elam between June of 1999 and September of 2000. Dr. Inniss testified Elam's mental condition had deteriorated because of his lack of medication.

The State countered Dr. Inniss' testimony with the April 1999 DMH psychologists' report, which concluded Elam understood the charges against him and was sufficiently competent to assist in his defense. The State also presented testimony from Police Sergeant Mike Platte, who witnessed Elam's conduct at a prior suppression hearing. Sgt. Platte testified that Elam smiled during Dr. Zimmerschied's testimony about his incompetence, and then glared when the judge denied the motion to suppress. The State also argued that Elam's responses during the competency hearing and other proceedings indicated he understood the nature of the proceedings. The record also indicates that Elam was sufficiently competent to write letters to the judge complaining about his attorney, inquiring about "the proper percedure [sic] to file the motions that can bring these concerns to the court's attention," to request that he be allowed to appear in court in civilian clothes with a minimum of restraint, and to express concern about having agreed to a continuance of his trial.

---

[2] Zyprexa is the commercial name for Olanzapine.

The trial court found Elam competent to proceed to trial and denied the motion to stay, ruling,

> [t]he defendant is presumed to have the mental capacity and fitness to proceed. The defendant has not proven by a preponderance of the evidence that he does not have the mental fitness to proceed. The exhibits admitted as well as the testimony together with the Court's observations of the defendant and the record in this cause belies any allegation that the defendant is unable to assist in his defense. He has been articulate and aware of his circumstances and has so far become involved beyond the usual in the defense of [this] case. [The] Court finds there is nothing in the record, in the statements of the defendant, in his correspondence to the Court, that would indicate any mental disease or defect or inability to proceed.

Elam's trial began October 2, 2000. After a three day trial the jury found him guilty of all charges. On November 28, 2000 Elam was sentenced to consecutive sentences of life imprisonment without possibility of parole for first-degree murder, life imprisonment for armed criminal action, and seven years imprisonment for second-degree arson.

## 2. Procedural History

Petitioner was represented at trial by lead counsel Steven Reed and co-counsel Jane Dunn. The Missouri Court of Appeals, Western District, affirmed the convictions on May 21, 2002, but the Missouri Supreme Court granted Elam's application to transfer the case in order to consider the competence issue on August 27, 2002. After the case was briefed and argued, the Missouri Supreme Court retransferred the case to the Court of Appeals on November 26, 2002. As a result, the original opinion of the Court of Appeals affirming his convictions was reinstated and the mandate issued on December 10, 2002.

Petitioner timely moved for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 on March 13, 2003. An evidentiary hearing was conducted and the motion was subsequently denied on July 7, 2007. This decision was affirmed by the Court of Appeals on

January 8, 2008. The mandate issued June 26, 2008. Petitioner timely filed his pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 23, 2009.

## STANDARD OF REVIEW

Federal courts may not grant a writ of habeas corpus on any claim that was adjudicated on the merits in a state court proceeding unless adjudication of the claim,

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2009).

A decision is contrary to clearly established Supreme Court law if the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or…decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision unreasonably applies clearly established Supreme Court law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* This standard is objective, not subjective. *Id.* at 409. An unreasonable application of federal law is different from an incorrect application of federal law. *Id.* at 410.

Finally, a determination of a factual issue made by a state court is presumed correct. 28 U.S.C. § 2254(e)(1) (2009). The petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Id.*

# DISCUSSION

Petition raises five claims for relief, none of which establish grounds for issuing the writ.

**1. Petitioner has not established that the state courts' determination regarding his competency to stand trial was incorrect.**

Petitioner's first claim is his strongest. He contends his Fourteenth Amendment due process right to a fair trial was violated by making him stand trial when he was mentally incompetent, effectively depriving him of his right to effective assistance of counsel and the right to confront the witnesses against him. He argues he presented sufficient evidence to the state court to prove by a preponderance of the evidence that he was mentally incompetent at the time of trial.

A state court's competency determination is a factual finding entitled to a presumption of correctness. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Lyons v. Luebbers*, 403 F.3d 585, 593 (8th Cir. 2005). Thus Petitioner must show by clear and convincing evidence that the state courts' findings that he was not competent are incorrect.

Petitioner cannot meet this burden. While Petitioner has proven he was not given his anti-psychotic medication for 14 months leading up to his trial despite the DMH doctors' recommendation, a fact which almost certainly caused his mental condition to deteriorate to some degree, Petitioner has not shown by clear and convincing evidence that during this period his mental condition had deteriorated to the point that he was once again incompetent to stand trial. To the contrary, there is ample evidence in the record which demonstrates Petitioner was competent to stand trial: The April 1999 DMH report (which has evidentiary value despite the fact that it was written while Petitioner was receiving his medication), Sgt. Platte's testimony, Petitioner's letters to the trial judge, and the trial judge's own observations of Petitioner during the pretrial proceedings all show that Petitioner was able to rationally follow the proceedings and

participate in his defense.  Collectively this evidence is enough to overcome any inference of incompetency which might follow from Petitioner being without his psychotropic medication for 14 months.

The trial court's factual determination of competency is entitled to a presumption of correctness, and Petitioner has not shown by clear and convincing evidence that the trial judge's competency finding was incorrect.  Petitioner's first claim for relief is therefore denied.

**2.    The prosecutor's closing argument was not improper and prejudicial.**

Petitioner also argues that during closing argument the prosecutor commented on his failure to testify and also suggested that if he was found not guilty by reason of insanity he would be released immediately.

**a.    The prosecutor did not violate Petitioner's constitutional rights by commenting on his failure to testify.**

During closing argument Petitioner's attorney, Steven Reed, argued that the testimony of four of the state's witnesses was inherently contradictory and that "based upon the testimony of the State's witnesses and testimony [the murder was] not possible."  In his rebuttal the prosecutor argued,

> This is an easy case.  I think Mr. Reed was -- excuse the phrase repeatedly, if you believe their testimony when talking about the state's witnesses, you should believe Mr. McQuinn when he talks about the devil but don't believe him when he talks about setting the fire twice.  If you believe their testimony the only person that he didn't ask that question about, you know who that was.  Sure you do.  He said, "Well, if you believe the state."  Well, I'm not asking you to believe the state. I'm not asking you to believe Mr. Reed.  I'm asking you to look at all the facts and to determine what happened that night …

Petitioner argues that the prosecutor's use of "only person" was obviously intended to refer to him, suggesting to the jury that Petitioner was never asked because he did not testify in

his own defense. He argues this remark was clearly calculated to induce the jury to draw an adverse inference about his guilt from his failure to take the stand and explain his actions that night. On his direct appeal the Missouri Court of Appeals held that,

> It is difficult to discern from the record whether the prosecutor's comment referred to Elam or Dr. Inniss. At most, the comment could be considered an indirect reference to Elam's failure to testify that would require reversal only if there was calculated intent to magnify that decision so as to call it to the jury's attention. *State v. Neff,* 978 S.W.2d 341, 344 (Mo. banc 1998). We find no such intent in this single, ambiguous comment which responds to the defense's allegation of inconsistent testimony and does not place extraordinary focus on the defendant.

89 S.W.3d at 525.

The Court agrees that the prosecutor's argument did not violate Petitioner's constitutional rights. The Court cannot make much sense of the prosecutor's argument, but if it was a comment on the Petitioner's failure to testify it was so confused and indirect that it did not manifest an intention to call attention to his failure to testify, nor would the jury have understood the prosecutor's argument as a comment on the his failure to testify. Consequently, the state court's decision to deny relief was not contrary to, or involve an unreasonable application of, clearly established Federal law. *See Sidebottom v. Delo*, 46 F.3d 744, 759 (8th Cir. 1995).

**b.    The prosecutor's misstatement of the law during closing argument did not violate Elam's constitutional rights.**

During closing argument defense counsel urged the jury to find Petitioner not guilty by reason of insanity. He argued,

> [w]hat we have to do is determine how we do justice. Now, we can lock Gerald away in prison for a long time and in the prisons he will fester with a mental illness for I don't know how long. In the instruction when a person is found not guilty by reason of mental disease or defense excluding responsibility that person must—the Court must commit them to the Director of Mental health's custody in a state mental rehabilitation facility. This person can be

8

conditionally released only if the Court—when it determines the person does not have and will not have within the recent future a mental disease or defense rendering him dangerous to the safety of himself or others. That instruction says that's what you consider and this is a man who caused the death of his grandfather.

. . .

So the question that we come back to is what do we do for justice? Does Gerald go to prison? Does he go to a mental institution maybe indefinitely? Take a hard look at the instructions, ladies and gentlemen, and you will see that the evidence . . . falls squarely within Instruction Number Ten which says that if Gerald's conduct was the result of a mental disease or defect that he was incapable of knowing and appreciating the nature and quality or wrongfulness of his conduct then you must vote not guilty by reason of mental disease or defect, and it sounds—given the nature of the case it sounds terrible, doesn't it, but based upon the instruction that's it. Gerald doesn't walk out the door.

. . .

[S]o my question I want to leave you with is whether you send someone like Gerald to a prison or do we send him to the Department of Mental Health where rather than wasting his life, which may be appropriate, I don't know, instead of wasting it we address some of the conditions. Maybe he's not deserving of help but at least he doesn't fester and fall apart in prison.

In his rebuttal the prosecutor responded,

[T]hey want Gerald to go to a mental hospital. Let me tell you something. [In prison] [h]e will be allowed to play cards with other inmates. He will be allowed to watch T.V. He won't fester there. He gets treatment for whatever problems he has. If we didn't treat him, you know what? There would be lawsuit after lawsuit about his Constitutional rights, and when Mr. Reed says he'll go to a mental hospital, he can get out of that mental hospital, and do you know when he could get out of it? Before you and I get home from here. He could be in there for the rest of is [sic] life but he could get out that quick. You know how he gets out of there? He gets a psychiatrist to come into court and say, "You know what, Gerald is cured," and do you know what, just like I asked Doctor Inniss, the greatest protection in the world, no one can tell you you're wrong.

The jury was also read the following instruction on this issue:

9

> When a person is found not guilty by reason of mental disease or defect excluding responsibility, the Court must order that person committed to the Director of the Department of Mental Health for custody and care in a state mental health or retardation facility. This person can be unconditionally released from commitment only if and when it is determined by the Court that the person does not have, and in the reasonable future, is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others. This person can be conditionally released from such custody only if and when it is determined by a Court that he is not likely to be dangerous to others while on conditional release.

Elam argues that the prosecutor's argument violated his due process right by denigrating his only defense with an inaccurate statement of the law. The Missouri Court of Appeals denied this claim, holding that

> [a]lthough the prosecutor's comments oversimplified and exaggerated the post-trial procedures for a defendant acquitted by reason of insanity, we find it unlikely that jurors actually believed Elam could be set free from a mental hospital on the same day the trial ended. The prosecutor noted that a doctor would have to come back to court and report that Elam was cured of his mental illness before he could be released. Additionally, the jury was instructed, pursuant to MAI-CR 30.02A, regarding the possibility of release if the defendant was found not guilty by reason of insanity.

89 S.W.3d at 524.

The Court agrees and finds that the state courts' decision denying Petitioner relief is not contrary to, or involve an unreasonable application of, clearly established Federal law. The prosecutor was simply rebutting defense counsel's argument that if Petitioner were sent to prison he would "fester and fall apart," but if he were found not guilty by reason of insanity he would not simply "walk out the door." While the prosecutor did literally misstate the law in describing how quickly Petitioner could be released, this misstatement was inconsequential. No juror could have believed that if Petitioner were found not guilty by reason of insanity that he would be released from the mental hospital that same day, particularly given the instruction the jurors had

received. The jury undoubtedly recognized that the prosecutor had simply became caught-up in his closing argument and was exaggerating. Accordingly this claim is denied.

        **c.**        **Petitioner was not prejudiced by the cumulative effect of any errors.**

Finally, Petitioner contends that the cumulative effect of the prosecutor's comments violated his Fifth Amendment right to due process. As discussed above the Court finds no errors in the state courts' ruling. Even if there were errors here, it is well-established that "cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own." *Girtman v. Lockhart*, 942 F.2d 468, 475 (8th Cir. 1991).

**3.**    **Trial counsel was not ineffective for failing to call Drs. Mojdehi and Zimmerschied as witnesses at the pretrial competency hearing.**

Petitioner also argues his attorney rendered ineffective assistance of counsel at the pretrial competency hearing by failing to call Drs. Mojdehi and Zimmerschied as witnesses to bolster Dr. Inniss's testimony and clarify their opinion that Petitioner's competence depended on receiving his anti-psychotic medication in the months preceding trial.

To succeed on a claim of ineffective assistance of counsel, a petitioner must show (1) that "trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonable competent attorney, and (2) trial counsel's deficient performance prejudiced the defense." *Armstrong v. Kemna*, 534 F.3d 857, 863 (8th Cir. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984)). Judicial review of trial counsel's performance is highly deferential, "indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Armstrong*, 534 F.3d at 863 (citations omitted). Trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."

11

*Strickland*, 466 U.S. at 690. But strategic choices made in the absence of preparation or investigation are not protected by the same presumption. *Armstrong*, 534 F.3d at 864.

Petitioner's trial counsel Mr. Reed testified at the 29.15 hearing that he did not call Dr. Zimmerschied at the pretrial competency hearing because Zimmerschied had not seen Petitioner for over a year, and Dr. Inniss had recently seen him. He also testified that he did not believe he needed Zimmerschied or Mojdehi because he had Dr. Inniss.

The state post-conviction relief court held that trial counsel had demonstrated a reasonable trial strategy and that Zimmerschied's testimony would not have aided Petitioner's defense. The court also found Mojdehi's testimony would have been cumulative in light of the fact that Inniss had already testified that she did not believe Petitioner was competent to stand trial, thus not calling him was reasonable.

The state court of appeals court affirmed, holding it was reasonable to call Inniss instead of Zimmerschied because Inniss had seen him more recently. The court also held Petitioner had failed to show that the need to call Mojdehi to clarify his opinion was obvious.

The state courts' determination was not an unreasonable application of law or an unreasonable determination of the facts. Reed was not deficient for failing to call the other doctors as witnesses, his decision was reasonable trial strategy. Although Petitioner contends these witnesses could have "bolstered" Dr. Inniss' testimony and "clarified" any doubt the judge had that Petitioner could not have been competent if he had not been taking his medication, the doctors testimony would have been cumulative. The trial court had already heard this evidence, and failure to present cumulative evidence does not constitute ineffective assistance of counsel. *See Hall v. Luebbers*, 296 F.3d 685, 693 (8th Cir. 2002). Even if failing to call them was somehow ineffective, Petitioner has not demonstrated he was prejudiced. While hearing the same testimony two more times might have made Inniss' testimony more persuasive, it would

not have changed the fact the 1999 DMH report, Sgt. Platte's testimony, Petitioner's letters to the trial judge, and the trial judge's own observation of Petitioner all provided sufficient evidence that Petitioner was competent to stand trial.

Petitioner is not entitled to relief on this claim.

**4.     Trial counsel was not ineffective for failing to call Dr. Zimmerschied at trial.**

Petitioner also contends that trial counsel was ineffective for failing to call Dr. Zimmerschied to bolster his insanity defense at trial.[3]

This claim does not merit relief. Reed testified at the post-conviction relief hearing that he did not call Zimmerschied because his testimony was both "helpful and damaging" with respect to the three threshold issues on Petitioner's insanity defense. Reed said that Zimmerschied was favorable on the nature and quality issues, but not very helpful on the issue of whether Petitioner could understand the wrongfulness of his actions. Dr. Inniss on the other hand "was pretty solid on all three." Reed thought the success of insanity defense would turn on the issue of wrongfulness, and Reed did not want to hurt Inniss' testimony by bringing in Zimmerschied's contradictory testimony on this issue. Consequently Reed's decision not to call Zimmerschied was clearly a strategic decision and thus not a basis for granting the Petition. *Strickland*, 466 U.S. at 690.

**5.     Trial counsel was not ineffective for failing to submit a self-defense instruction.**

Finally, Petitioner claims trial counsel was ineffective for not requesting a jury instruction that he was acting in self-defense as he described in his statements to the police. These statements allegedly explain "that his grandfather picked up a knife and thereafter his

---

[3] Petitioner argues for the first time in his reply brief that this claim may be reviewed *de novo* because the state court of appeals ignored two aspects of the record in determining trial counsel's performance was not deficient. Because this argument is raised for the first time in a reply brief when it could have been raised earlier, the Court will not consider it. *Herd v. Am. Sec. Ins. Co.*, No. 06-4284-VC-C-NKL, 2007 WL 603084, at *1 (W.D. Mo. Feb. 22, 2007); *see Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 609 (8th Cir. 2004). That said, even if the Court were to consider this claim *de novo*, it would deny relief.

grandfather came at him swinging his arms and he was forced to stab his grandfather to defend himself." They thus provided sufficient evidence to submit a self-defense instruction that Petitioner was provoked by his grandfather and reasonably believed that force was necessary to protect himself.[4]

There is no merit to this claim. As a threshold matter Petitioner would not have been entitled to a self-defense instruction. Under Missouri law there must be four elements present to submit a claim of self-defense: (1) absence of aggression or provocation on the defendant's part; (2) real or apparent necessity for the defender to kill to save herself from an immediate danger of serious injury or death; (3) reasonable cause for the defender's belief in such necessity; and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger. *State v. Avery*, 120 S.W.3d 196, 200-201 (Mo. banc 2003). Petitioner cannot satisfy the fourth element, and probably not the first either. In every version of his story Petitioner told he stated that his grandfather warned him not to come by his house, that he traveled to his grandfather's house anyway in the middle of the night and went inside, and that once inside he picked up a knife in the kitchen. Under these circumstances—being warned not to go to someone's home, entering their house in the dead of night, then picking-up a knife once inside— Petitioner obviously did not do all within his power to avoid the danger. Indeed, he actively courted the danger, thus he was not entitled to a self-defense instruction. Accordingly, trial counsel was not deficient for failing to submit such an instruction.

Additionally, there was no prejudice to Petitioner for failing to receive the instruction. Petitioner's assertion that "there is a reasonably probability that, had the jury been instructed on

---

[4] Petitioner also argues for the first time in his reply brief that this claim may be reviewed *de novo* because the state court of appeals did not discuss the prejudice prong of the *Strickland* analysis in its decision. Again, because this argument is raised for the first time in a reply brief when it could have been raised earlier, the Court will not consider it. *Herd*, 2007 WL 603084 at *1; *see Martin*, 390 F.3d at 609. But even if the Court were to consider this claim *de novo*, it would deny relief.

self-defense," he would have been convicted of a lesser offense, or acquitted outright, is completely meritless. After reading the entire trial transcript the Court cannot see any likelihood that a jury would have ever found Petitioner killed his grandfather in self-defense, even second-degree murder. There is simply too much evidence here—Petitioner's aggressive behavior, his perception that his grandfather was evil, the arson of the dwelling afterwards to hide the evidence, and Petitioner's multiple inconsistent stories to the police—for the Court to find a reasonable probability that Petitioner would have received a better outcome if the jury had been instructed on self-defense.

This claim is denied.

## Conclusion

For the reasons discussed above Petitioner Elam's First Amended Petition for a Writ of Habeas Corpus (Doc. 16) pursuant to 28 U.S.C. § 2254 is DENIED.

**IT IS SO ORDERED.**

Date:   September 3, 2010                         /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT